IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES RICHARD DECKER,

    Petitioner,               No. CIV S-03-0799 FCD KJM P

    vs.

MIKE KNOWLES,

    Respondent.            <u>FINDINGS AND RECOMMENDATIONS</u>

                                  /

        Petitioner is a California prisoner proceeding with counsel with an application for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner stands convicted of several drug related offenses and is serving a sentence of eighteen years' imprisonment.

I. <u>Background</u>

        On direct appeal, the California Court of Appeal summarized the evidence presented at petitioner's trial as follows:

> About 1:00 a.m., December 30, 1998, Redding Police Officer Dean Adams made a traffic stop of the Chevy Cavalier defendant was driving as it pulled into a driveway and parked near a mobile home. Defendant, who was neatly dressed and had no grease or dirt on him, immediately jumped out of the car and yelled for Adams to turn off his lights because this was his sister's home. When defendant refused to comply with Adams's repeated directives to get back into the car, Adams placed him in the back of the patrol car.

The passenger, whose true name was Sonya Lynn Southard, gave Adams a false name and birth date; she also falsely stated that the car belonged to someone other than herself.  Southard had on her person a prescription bottle which contained pills but bore no prescription.  When Adams told Southard that her identity could not be verified and she would be taken into custody, she fled.  Adams caught her and placed [her] in the patrol car of Officer Morehouse, who had arrived as backup.

A search of defendant disclosed $5,450 in cash, which defendant claimed came from the sale of a car.  When the officers opened the door of the Cavalier, they immediately sensed a strong odor of marijuana.  Inside a black bag on the floor beneath the steering wheel was a zippered pouch which contained a baggie of marijuana, a bag of methamphetamine, a bottle of Dilaudid, black electrical tape, numerous small baggies, a marijuana pipe with residue, a metal spoon with methamphetamine residue and a set of keys on a ring.  Printed on a tag on the key ring was "Scooter's Auto Center in Lake Shasta." [Footnote omitted.]

In the back of the Cavalier the officers located a brown or maroon pouch which contained five syringes, 200 small baggies, and plastic scales with residue.  Also found in the car was an address book containing phone numbers of persons known by law enforcement to be involved in drug activity.  Southard claimed ownership of the maroon pouch and the address book.

Agent Bruce Bonner, an expert in narcotics activity, testified that when a male and female transport drugs and are stopped, the male will frequently jump out and attempt to distract the officer while the female will hide the drugs.  Southard was known to Bonner as a user, not a dealer.

Defendant's father testified that during the past two years defendant had worked for a short time at Scooter's Towing.

Julane Decker, a real estate agent and defendant's mother, testified that just before Christmas she gave defendant $5,000 cash to buy a motorcycle.  Defendant was to repay her by selling a Pontiac Trans Am he was fixing.  Decker identified defense exhibit D as the loan agreement. [Footnote omitted.]  It was dated December 28, 1998.  Decker also identified a pair of overalls as defendant's, claiming she had gotten them from Ron Gamble after defendant's arrests.  Defendant was working on the Pontiac at Ron Gamble's shop or home.

Defendant's girlfriend, Brenda Hammon, testified she dropped defendant off the morning of December 29 at Gamble's home to work on his car.  Mark Tyree, who lived on Gamble's property, saw defendant working on a vehicle during the afternoon and into the late evening of December 29.

> Sonya Southard, who had previously been defendant's girlfriend, saw him walking along the side of the road the night of December 29. They spoke and she offered him a ride to his sister's house; however, she wanted him to drive because she was a parolee at large. Southard claimed all of the drugs and keys found in the black bag were hers. She admitted to having pleaded guilty to charges in connection with the drugs. Southard also admitted prior convictions for possession of a controlled substance in 1988, for being a convicted felon in possession of a firearm in 1989, and for another controlled substance possession in 1993.

Answer, Ex. C at 2-5.

II. <u>Requirements For Federal Habeas Relief</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").[1] It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002).

/////

/////

/////

---

[1] Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief. <u>Fry v. Pliler</u>, 551 U.S. 112, 127 S. Ct. 2321, 2326-27 (2007).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919 (2003). Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

"Clearly established" federal law is that determined by the Supreme Court. Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004). At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been

4

"clearly established" and the reasonableness of a particular application of that law. Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at 782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court precedent is misplaced).

III.  Arguments And Analysis

   A.  Inappropriate Question By Prosecution

In his first claim, petitioner asserts his Fourteenth Amendment right to a fair trial was violated when the prosecution asked an inappropriate question of Officer Bonner on re-direct. Petitioner describes this claim as follows:

> The court violated petitioner's due process right to a fair trial when it overruled his motion for a mistrial after the prosecutor implied that he was known as a drug dealer and Sonya Southard was not. On direct examination, Agent Bonner testified he had heard Sonya Southard was "primarily a drug user and had never been known as a dealer." (RT 380.) On cross-examination by petitioner, Agent Bonner testified he believed there was probable cause to arrest petitioner for the drugs in the car, but could not draw a conclusion about guilt. (RT 390-391.) Then, the prosecutor on redirect, asked the following outrageous question: "Agent Bonner, would your evaluation or analysis of that hypothetical change if you knew the driver was James Decker?" (RT 392.)
>
> Petitioner immediately objected and the court sustained the objection. (CT 392.) The court then admonished the jury that a question asked by an attorney is not evidence and the jury should not speculate as to what the answer might have been to the above question. (RT 392-393.) Petitioner requested a mistrial because the "question was clearly prejudicial and implied an answer" that prejudiced petitioner. (RT 394-395.) The prejudice was particularly severe because the prosecution had improperly established that Ms. Southard was not known as a drug dealer. (RT 380.) While petitioner did not immediately object to the character evidence about Ms. Southard, the full import and prejudice of this speculative character evidence did not become apparent until the prosecutor insinuated by her question that, in contrast to Ms. Southard, petitioner was known as a drug dealer.

Pet. at 4, 6; see also Mem. P. & A. In Supp. Of Pet. (Mem. P. & A.) at 3.

/////

A violation of the Due Process Clause of the Fourteenth Amendment occurs if a comment made by the prosecution "infect[s] the trial with unfairness." See Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). "To prevail on such a claim, [petitioner] must show a 'reasonable likelihood' that the jury based its verdict on the prosecutor's misstatements." Brown v. Payton, 544 U.S. 133, 143-44 (2005) (internal citation omitted); see also Boyde v. California, 494 U.S. 370, 380-81 & n.4 (1990).

In this case, petitioner cannot make the required showing. Petitioner argues that the prosecutor previously had elicited a response from Bonner clarifying that Southard was a drug user and not a dealer, see RT 380, establishing essential context such that all the prosecutor had to do to infect the proceedings was to then pose the hypothetical question about petitioner. Traverse at 3-4. But as petitioner himself explains, once the prosecutor posed his second question, petitioner's counsel "immediately objected." See RT 392. Bonner had not yet answered the question, and did not provide an answer at any point. The trial court told jurors not to consider the question during deliberations. RT 392:26-393:3, 528:17-19.

Jurors are generally presumed to follow the court's instructions regarding whether, and in what respect, something can be considered evidence, see Aguilar v. Alexander, 125 F.3d 815, 820 (9th Cir. 1997), and that presumption has not been rebutted here. Petitioner argues that the "prosecutor's insinuation, that would have influenced even the most obtuse juror, lightened the prosecutor's burden of proving petitioner guilty beyond a reasonable doubt." Mem. P. & A. at 3. He does not, however, point to anything in particular indicating the question had any actual impact on the jury's verdict. On this record, the court concludes the prosecutor's question "was but one moment in an extended trial and was followed by specific disapproving instructions," such that petitioner was not deprived of a fair trial. Donnelly, 416 U.S. at 645. Petitioner's first claim should be rejected.

/////

/////

B.  Jury Misconduct

Petitioner also asserts that juror misconduct during deliberations at his trial resulted in a violation of his rights under the Sixth Amendment.  Petitioner's claim is mostly based upon a declaration provided by one of the jurors, which petitioner quotes in support of his second claim:

> During jury deliberations, at least two male members of the jury identified a specific key located on the keyring which had been admitted into evidence specifically as a motorcycle key.  The jury considered this fact that a motorcycle key was on the keyring, among other things, to determine that the ownership of the keyring was male, as oppossed [sic] to female.  This fact allowed the jury to then conclude ownership of the keyring was the defendant's, as opposed to Sonya Southard.
>
> Also during deliberations of the jury, at least three, if not more jury members, felt inside of the black nylon bag that had been admitted into evidence and found that there was grease on the botton [sic] of the inside of the back.  This fact, coupled with the fact the defendant worked on automobiles, was considered by the jury to determine whether or not the black bag belonged to defendant.
>
> Lastly, the jury examined the baggie of marijuana.  Some examined the baggie to determine if they could smell the marijuana and how powerful the smell was.  Some jurors did this with the bag closed, while others did this with the bag open.
>
> This examination of the baggie of marijuana was conducted by the jury for the purpose of determining the credibility of the police officer's [sic] testimony regarding the fact they could smell the marijuana when they first entered the vehicle the defendant was found in.
>
> This fact, among others, was utilized by the jury during their deliberations to determine that the baggie of marijuana found in the black bag, as well as, the other drug items, belonged to the defendant.  (CT 376-377).

Pet. at 7.  In support of this claim, petitioner also points to the declaration of a defense investigator in which the investigator indicates that a second juror informed him of the same information described above.  Id. at 7-8.

Petitioner argues that the declarations demonstrate the jurors engaged in impermissible speculation, experimentation and use of their own specialized expertise with

7

respect to matters that were not in evidence, namely the motorcycle key and its ownership, the grease in the bag and its origin, and the smell of the marijuana at the time of trial compared or contrasted to its smell at the time of the underlying offense. Mem. P. & A. In Supp. Of Pet. at 6, 8-14; Traverse at 11-13.

The declarations petitioner submits in support of his juror misconduct claim are not automatically admissible in this action. The Federal Rules of Evidence provide, in pertinent part:

> Upon inquiry into the validity of a verdict . . ., a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict . . . or concerning the juror's mental processes in connection therewith. But, a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form.

Fed. R. Evid. 606(b); see also Fed. R. Evid. 1101(e) (providing inter alia that Federal Rules of Evidence apply in habeas corpus actions brought under 28 U.S.C. §§ 2241-2254).

It appears that all the matters discussed in the one juror's affidavit, and the affidavit from the investigator reporting on his interview with another juror as well, concern events that took place during deliberations. See CT 373-377. Therefore, nothing in the affidavits is admissible as a threshold matter unless one of the three exceptions applies to the general rule that a juror cannot testify to matters discussed during jury deliberations. On their face, the affidavits do not qualify for either the second or third exception, because the affidavits do not disclose anything that can be construed as identifying any outside influence brought to bear on any juror, or any mistake in the recording of verdicts.

The only evidence that could reasonably be considered testimony fitting within the first exception, whether extraneous prejudicial information was brought to jurors' attention, is the statement that two men opined that a particular key that had been admitted into evidence was

a motorcycle key.  But this opinion is not properly labeled "extraneous" under Rule 606(b) because jurors are allowed to bring to their deliberations knowledge based on their personal experiences as long as the knowledge is not of "facts specific to the litigation."  Hard v. Burlington Northern Railroad Co., 870 F.2d 1454 (9th Cir. 1989) (basic understanding of x-ray interpretation "falls outside realm of impermissible influence"); see also Marquez v. City of Albuquerque, 399 F.3d 1216, 1223 (10th Cir. 2005) (juror's personal experience with training police dogs deemed not extraneous under Rule 606(b)); cf. United States v. Navarro-Garcia, 926 F.2d 818, 821 (9th Cir. 1991) (evidence obtained through out-of-court experimentation is plainly extrinsic; "a juror's past personal experiences may be an appropriate part of a jury's deliberations" as long they do not involve personal knowledge of the parties or issues involved in the litigation).  Jurors' personal experiences are relevant "only for interpreting the record evidence."  Navarro-Garcia, 926 F.2d at 821.  Regarding the "interpretation" the jurors gave to the identification of one of the keys as a motorcycle key, that the owner of the key was male, jurors are allowed to draw inferences derived from the application of their common sense and life experience in considering individual pieces of admitted evidence in the context of the entire record.  See, e.g., RT 281, 284, 286 (jury instructions regarding how to determine facts based only on admitted evidence, defining circumstantial evidence).

Regarding the grease on the bottom of the black nylon bag and the smell of the bag of marijuana, the nylon bag and the marijuana also were both properly admitted as exhibits; they  do not qualify as extraneous prejudicial information and petitioner does not argue as much.  Instead, petitioner asserts the jurors' observation of the grease and the smelling of the marijuana constituted impermissible juror experimentation.  But petitioner does not cite authority for the proposition that closely observing the physical traits of admitted evidence or smelling it constitutes impermissible experimentation, and the court is not aware of any.  Cf. Navarro-Garcia, 926 F.2d at 821.

/////

Even if the court found it could consider that certain jurors professed expertise in identifying a key in evidence as a motorcycle key, observed grease on the bottom of the black nylon bag, and smelled the marijuana, the court could not recommend a grant of habeas relief because, objectively speaking, when considering the record as a whole, the court cannot find that any of the jurors' actions resulted in prejudice to petitioner.  See United States v. Hornung, 848 F.2d 1040, 1045 (10th Cir. 1988) (objective test should be applied in making an assessment of whether extraneous information is prejudicial).

For the foregoing reasons, petitioner's juror misconduct claim should be rejected.

### C. Failure To Hold Hearing

Petitioner's third claim is that the trial court should have admitted the declarations of the juror and investigator relied on in his second claim; alternatively, the trial court should have granted petitioner a hearing so that he could fully develop the facts as to his juror misconduct claim.  This is not a cognizable claim as petitioner has no Constitutional right to such a hearing in the trial court.  See Franzen v. Brinkman, 877 F.2d 26 (9th Cir. 1989).  In this court, there is no cause for a hearing given there is nothing before the court indicating jurors did anything inappropriate at petitioner's trial.  28 U.S.C. § 2254(e)(2); Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999); Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005).

### D. Ineffective Assistance Of Counsel

Petitioner's last claim is that he was deprived of his Sixth Amendment right to effective assistance of counsel because his trial counsel failed to present more evidence indicate the keys found in the black bag -- which also contained drugs, tape, baggies and a pipe -- did not belong to petitioner.  Pet. at 5, 10-11.  Petitioner asserts that counsel should have presented evidence indicating:  1) Sonya Southard actually owned a motorcycle; 2) Ms. Southard's sister found a set of keys in Ms. Southard's Cavalier that she thought were petitioner's and threw them away; 3) petitioner's mother believed that after petitioner was arrested, he could not find his

/////

keys; and 4) petitioner's mother knew what petitioner's keys looked like and believed that the keys found in the black bag were not petitioner's. Id.

Petitioner also believes counsel should have presented evidence indicating that the grease found in the black bag could have come from fingerprint ointment. Id. at 11.

The Supreme Court has enunciated the standards for judging ineffective assistance of counsel claims. See Strickland v. Washington, 466 U.S. 668 (1984). First, a defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Id. at 688. To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690. The court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. Second, a defendant must affirmatively prove prejudice. Id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

As for the grease found in the bag, petitioner fails to point to any admissible evidence confirming the presence of the grease, because the post-trial declarations from a juror and an investigator[2] discussing the grease, as discussed above, are not admissible. See pages 8-9 supra. Even assuming for sake of argument there was grease on the bag and trial counsel was aware of the grease,[3] it would not have been an unreasonable judgment for petitioner's counsel to not present evidence about the grease because there was no need to rebut an argument the

---

[2] Trial counsel's investigator, Don Luster, stated under oath that after trial he went to the Redding Police Department to examine the black nylon bag. Answer, Ex. G at 41. While he states "jurors could have easily mistaken black fingerprint powder for grease," there is no indication as to what exactly Luster found when he examined the bag, or if he even identified the substance on the bag with scientific certainty. Id.

[3] Petitioner does not argue that trial counsel was ineffective for not finding the grease.

prosecution did not make, namely that the grease demonstrated the bag was petitioner's. Counsel might also have reasonably determined to avoid a risky approach of pointing out the grease and then attempting to demonstrate it could only have been fingerprint ointment and not automotive grease, in essence highlighting potentially damaging evidence. In light of these facts, petitioner has not overcome the "strong presumption" that counsel rendered effective assistance of counsel. See Strickland, 466 U.S. at 690.

With respect to the keys, nothing suggests trial counsel was aware of most of the evidence to which petitioner now points and nothing suggests he should have been. If the keys were not petitioner's, petitioner was in a position to inform counsel of this prior to trial, and to point counsel to any evidence that might have proved the keys did not belong to petitioner, including his mother's testimony. Nothing in the record before the court suggests petitioner ever did this. It does appear trial counsel knew Sonya Southard's sister claimed to have thrown away a set of keys found in the Cavalier after petitioner was arrested. Counsel indicates he did not call Southard's sister because she "hated" petitioner and claimed to not remember any details about finding the keys or throwing them away. Answer, Ex. G at 43-44. Moreover, the jury heard Southard admit the keys found in the black bag were hers. RT 508:17-22. In light of these facts, it was not objectively unreasonable for counsel not to call Southard's sister.

For these reasons, petitioner was not deprived of his Sixth Amendment right to effective assistance of counsel. His final claim should be rejected.

IV. Conclusion

For the foregoing reasons, the court will recommend that petitioner's application for writ of habeas corpus be denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 15, 2009.

_____
U.S. MAGISTRATE JUDGE

---

1
deck0799.157(1)